## A11A2103. THE STATE v. TAKYI.

(724 SE2d 459)

ADAMS, Judge.

Elizabeth Takyi was arrested for driving under the influence of alcohol. Eighteen months later, following an evidentiary hearing, the State Court of Fulton County dismissed the State's case on the ground that the State had violated Takyi's constitutional right to a speedy trial. The State appeals, and we vacate and remand for further consideration as explained below.

Setting aside the transcript of the hearing for the moment, the record shows the following undisputed procedural facts. On October 3, 2008, an officer for the City of Sandy Springs Police Department issued Takyi citations for failure to maintain her lane and driving under the influence of alcohol. The citations ordered Takyi to appear in municipal court on November 19, 2008. The matter was apparently continued, and on January 5, 2009, Takyi appeared at an arraignment in municipal court and demanded a trial by jury. As a consequence, the case was bound over to the State Court of Fulton County.

On January 22, 2010, just over a year later, Robert Chestney of the Chestney Law Firm sent a letter to the Fulton County Solicitor-General inquiring about the status of the case and stating that his client requested "that the charges against her be brought to trial at the earliest possible opportunity, asserting her right to a speedy trial under the constitution." Chestney raised a concern about how the case was affecting his client's immigration status, and he concluded with the following request: "please try to locate this case and accuse it as quickly as possible, so we can get it to trial before it results in her losing everything she has worked so hard for." The solicitor-general responded three days later and explained that there was nothing in the county computer system to indicate that the county had received the paperwork; she asked for the traffic ticket to facilitate locating the file.

On February 4, 2010, 13 days later, the solicitor-general filed formal charges against Takyi in the state court. On February 22, Takyi, through attorney Rebecca Kozycki of the Chestney Law Firm, filed a demand for speedy trial pursuant to the United States and Georgia Constitutions and pursuant to OCGA § 17-7-170. On March 10, Albert A. Mitchell, an attorney from a different firm, filed an appearance on behalf of Takyi as her "counsel of record"; he also filed a discovery request and motions, but he did not file a demand for speedy trial.

On March 15, 2010, Takyi, through attorney Kozycki, filed a motion to dismiss on the ground that her constitutional right to a

speedy trial had been violated. On that same day, the assigned judge recused herself. On April 6, Mitchell moved to withdraw as counsel in part because the defendant was "currently represented by another Attorney."

On April 27, 2010, the second judge assigned to the case held a hearing on the motion. Robert Chestney and Michael Harty (another member of the Chestney Law Firm) testified, as did Albert Mitchell and the appellant. Two days later, the court entered an order granting the motion to dismiss based on *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). The court found that the 18-month delay was unreasonable and raised a presumption of prejudice, thereby triggering a balancing test of the remaining factors. The court found that there was nothing in the record to explain the delay other than the State's negligence and nothing to indicate that Takyi bore any responsibility for the delay; that Takyi had asserted her right to a speedy trial as early as possible given that the case was missing for a year or more; and that Takyi was prejudiced because she had suffered unusual and extreme anxiety and concern associated with the pending charges because of her unresolved immigration status. The court weighed each of the last three factors in favor of Takyi, and, accordingly, found that her constitutional right to a speedy trial had been violated.

When considering a motion to dismiss on the grounds that an accused's constitutional speedy trial right has been violated, the court applies the test set forth in *Barker*, 407 U. S. 514, and *Doggett v. United States*, 505 U. S. 647, 651 (112 SC 2686, 120 LE2d 520) (1992). See, e.g., *State v. Porter*, 288 Ga. 524, 525 (2) (a) (705 SE2d 636) (2011). That test has two stages: The court first determines "whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered 'presumptively prejudicial.' " *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). "If not, the speedy trial claim fails at the threshold." Id. Otherwise, the court proceeds to "application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial." Id. "The trial court's weighing of each factor and its balancing of all four factors — its ultimate judgment — are reviewed on appeal only for abuse of discretion." *Porter*, 288 Ga. at 526 (2) (a).

1. The State acknowledges that the 18-month delay in this case was presumptively prejudicial as the trial court found. See *Doggett*, 505 U. S. at 652, n. 1 (delay approaching one year is presumptively prejudicial). We therefore move to the balancing test.

2. The second-stage, four-factor balancing test raises these questions:

> [i] whether delay before trial was uncommonly long, [ii] whether the government or the criminal defendant is more to blame for that delay, [iii] whether, in due course, the defendant asserted [the] right to a speedy trial, and [iv] whether he [or she] suffered prejudice as the delay's result.

*Doggett*, 505 U. S. at 651.

(a) The trial court did not clearly separate the threshold inquiry regarding the length of the delay from the question of whether the delay was uncommonly long. But although there is no express finding regarding this factor, in its findings, the court did conclude that the length of the delay was unreasonable, "especially for misdemeanor traffic offenses with one witness and no follow-up investigation."

The record includes testimony from Harty who, immediately before joining the Chestney Law Firm and shortly before representing Takyi, had worked for the Fulton County Solicitor-General. He testified that it can take a long time to transfer a case from Sandy Springs to Fulton County, and that he told Takyi that fact. He testified that moving from one court to another may add six to eighteen months to the process. There was, however, other evidence to suggest that Takyi's case was misplaced or could not be found for upwards of a year. Because the trial court's conclusion was based on some evidence, the court did not abuse its discretion in weighing this factor in favor of Takyi.

(b) On the second factor, the trial court found that there was nothing in the record to explain the delay other than the State's negligence and that there was "certainly nothing to suggest that it was due to the fault of the Defendant"; it therefore weighed this factor in favor of Takyi. But as shown above, there was evidence that Harty told Takyi that if she chose a jury trial and a transfer to State Court, there might be considerable delay. The definitive nature of the trial court's conclusion shows that the court did not consider the evidence that Takyi knew there would be some delay when deciding whether this factor weighed in favor of the State or Takyi.

(c) With regard to Takyi's assertion of her constitutional right to a speedy trial, the court found that because she "asserted her right to a speedy trial as early as possible, this factor is weighted in [her] favor." But Takyi did not demand a constitutional speedy trial until January 2010, over 15 months after her arrest. And although a defendant may assert his constitutional right to a speedy trial in municipal court, see, e.g., *State v. Lessing*, 302 Ga. App. 196 (690

SE2d 501) (2010), there is no evidence that Takyi even attempted to do so. Also, Takyi was allowed to testify to hearsay from conversations she had with people in Sandy Springs Municipal Court and the Fulton County Solicitor-General's office that related to her ability to assert her right to a speedy trial — to the effect that the case could not be located, thereby suggesting that she could not file such a demand — and the judge made a finding of fact based on that hearsay testimony: that "[t]he case 'did not exist' according to the Solicitor's office. . . ." But, as shown below, hearsay cannot support the trial court's conclusions.

Therefore, although there is significant evidence in Takyi's favor regarding her attempts to obtain a speedy trial, the court's finding appears to be based, at least in part, on an error of law regarding when Takyi could assert a constitutional speedy trial demand and partially based on improper hearsay evidence.

(d) Finally, the court concluded that Takyi was harmed by the delay. Courts are concerned with three types of prejudice arising from a delay in bringing a case to trial, " 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the (accused's) defense will be impaired' by dimming memories and loss of exculpatory evidence." *Porter*, 288 Ga. at 529. Here, Takyi only asserts the second form of prejudice, anxiety and concern. She was not incarcerated, and she does not contend her defense would be impaired, which is the most serious form of prejudice arising from delay. See id.

Takyi testified that she was prejudiced in that the delay caused her anxiety and concern regarding her immigration status. The State contends the lower court allowed impermissible hearsay on this topic, over objection, and based its findings of fact on that hearsay with regard to this factor. We agree.

For example, the court found that the Department of Homeland Security denied Takyi's application for "Adjustment of Status" "because her [DUI] case remained unresolved . . ."; that Homeland Security denied her request to reopen the case; and that, as a result, she is "facing a threat of deportation removal proceedings." But no one from Homeland Security testified at the hearing. Rather, Takyi testified, often over objection, that she was told that unless she had her DUI taken care of, her immigration application would be closed; that a September 21, 2009 letter from Immigration to "Elizabeth Fugate" told her that employment authorization had been denied because she had not been able to resolve her DUI case, when, in fact, the letter does not say that; that a letter dated July 8, 2009, that was not even introduced, meant that she was facing deportation; and that a letter dated May 22, 2009, that also was not introduced told her that because her DUI case was not closed, her attempt to reopen her

immigration case had been denied. And Takyi introduced a letter from her Chicago-based immigration attorney, who was not present at the hearing, that stated that Takyi faced a "very real risk of deportation . . . as a result of the delay in bringing her misdemeanor case to trial . . . ." Finally, the court admitted a computer log dated September 9, 2009 from the Chestney Law Firm, which did not represent Takyi with regard to her immigration matters, that stated, "immigration threatening to deport [Takyi] unless finalized."

The rule that hearsay is objectionable and without probative value is applicable to hearings on speedy trial motions. *Porter*, 288 Ga. at 530 (2) (c) (4); *Jones v. State*, 284 Ga. 320, 324 (2) (667 SE2d 49) (2008). In *Jones*, the court found that a document allegedly prepared by a police investigator that contained statements by a prosecutor was "obviously inadmissible, non-probative hearsay" because neither the investigator nor the prosecutor testified at the speedy trial hearing. *Jones*, 284 Ga. at 321-322, 324. See also *Porter*, 288 Ga. at 530 ("Porter never offered the letter into evidence at the hearing on the motions to dismiss, and even if he had, the letter would have been hearsay without probative value."). The Supreme Court also noted that evidence from nontestifying witnesses cannot be used to support the finding of harm from a delay in getting the case to trial or who was responsible for the delay. *Jones*, 284 Ga. at 322. Thus, the trial court in this case erred by allowing hearsay evidence and relying on hearsay in its findings. See also *Howard v. State*, 307 Ga. App. 822, 828 (706 SE2d 163) (2011) (Defendant's testimony "that having this case pending for so long caused him great anxiety and concern . . . was hearsay and, therefore, of no probative value."). Thus, the trial court's decision to weigh the delay in favor of Takyi was flawed.

In sum, the trial court made factual and legal errors when attempting to perform the delicate balancing test required in these cases.

> As a result, the trial court could not properly balance the *Barker* factors, and . . . [we must] vacate[ ] the order and remand[ ] the case for the trial court to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order.

*Porter*, 288 Ga. at 534. See also *State v. Reimers*, 310 Ga. App. 887 (714 SE2d 417) (2011).

*Judgment vacated and case remanded with direction. Barnes, P. J., concurs. Blackwell, J., concurs in judgment only.*

DECIDED FEBRUARY 29, 2012.

*Carmen D. Smith, Solicitor-General, R. Leon Benham, Assistant Solicitor-General*, for appellant.
*Rebecca T. Kozycki*, for appellee.